1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

9  99¢ ONLY STORES,                    CASE NO. 1:10-cv-01343-LJO-SMS
   a California corporation,
10
                    Plaintiff,         **FINDINGS AND RECOMMENDATIONS**
11                                      **RECOMMENDING THE GRANT OF**
           v.                          **PLAINTIFF'S MOTION FOR**
12                                      **DEFAULT JUDGMENT**
   VARIETY 99 CENTS PLUS, a California
13 company; TOMY LE, an Individual; and
   DOES 1-20, INCLUSIVE,
14
                    Defendants.         (Doc. 14)
15 _____/

16

17       Plaintiff 99¢ Only Stores moves for Entry of Default Judgment against Defendants Tomy

   Le and Variety 99 Cents Plus.  This Court has reviewed Plaintiff's motion and supporting
18
   documents and has determined that this matter is suitable for decision without oral argument
19
   pursuant to Local Rule 78-230(g).  Having reviewed all written materials submitted and
20
   applicable law, the Court recommends that Plaintiff's motion be granted.
21

22 **I.    Procedural and Factual Background**

23       On July 23, 2010, Plaintiff filed its complaint against Defendant Variety 99 Cents Plus,

   claiming false designation of origin, trademark infringement, trademark dilution, and unfair
24
   competition under the Lanham Act (15 U.S.C. § 1051 *et seq.*) as well as related claims under
25
   California state law.  Plaintiff contended that Defendant deliberately misappropriated Plaintiff's
26
   federally designated names and service marks to intentionally create confusion between its store
27
   and Plaintiff's chain of stores, with the intent to misappropriate Plaintiff's good will.
28
   ///

The initial proof of service, filed August 11, 2010, identified Tomy Le as the owner of Defendant Variety 99 Cents Plus. On September 28, 2010, Plaintiff amended its complaint to add Tomy Le as a defendant. The Clerk issued a summons for Defendant Tomy Le on September 29, 2010. Le was served on October 4, 2010. Neither Defendant answered or otherwise appeared in this action. On November 9, 2010, the Clerk entered default against Defendant Tomy Le. The Clerk entered default against Variety 99 Cents Plus on November 12, 2010.

According to the complaint, Plaintiff, a publically traded California corporation that operates over 200 retail stores selling discounted merchandise, has done business in California since 1982, when it opened its first store in Los Angeles. It uses a collection of service marks, trademarks, and trade names, referred to as the "99¢ marks." The common and essential element of Plaintiff's marks is the numeral "99," which is usually large and central, making it the featured component of each mark. Plaintiff uses the marks on its price signs; shelving; shopping carts, bags, and baskets; receipts; merchandise stickers; employee name tags and apparel; company vehicles; and purchase orders, letterhead, and annual reports. Plaintiff also uses the numeral "99" in various ways in its slogans, promotions, and advertising. Plaintiff spends approximately $2 million annually on advertising.

Plaintiff has registered the following marks with the federal government:

### FEDERAL PTO REGISTRATIONS

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| "ONLY 99 ONLY" | 1,395,427 | May 27, 1986 |
| "99¢ ONLY STORES" | 1,455,937 | September 1, 1987 |
| "DRIVER CARRIES 99¢ ONLY" | 1,712,553 | September 1, 1992 |
| "OPEN 9 DAYS A WEEK 9 AM – 9PM" | 1,724,475 | October 13, 1992 |
| "ONLY 99¢ ONLY" | 1,730,121 | November 3, 1992 |
| "99¢ ONLY STORES" & design | 1,741,928 | December 22, 1992 |
| "99¢ ONLY" | 1,747,549 | January 19, 1993 |
| "99¢ ONLY STORES" | 1,947,809 | January 16, 1996 |

2

| | | |
|---|---|---|
| "99¢" | 1,959,640 | March 5, 1996 |
| "99¢ ONLY STORES" & design | 2,402,900 | November 7, 2000 |
| "99 THANKS" | 2,761,939 | September 9, 2003 |
| "HIGHWAY 99" | 3,132,449 | August 22, 2006 |
| "HIGHWAY 99" & design | 3,132,450 | August 22, 2006 |
| "HIGHWAY 99 YOUR ROAD TO GREAT SAVINGS" | 3,144,871 | September 19, 2006 |

Registration numbers 1,712,553; 1,730,121; 1,741,928; 1,747,549; 1,947,809; 1,959,640; 2,401,900; and 2,761,939 are incontestable under the Lanham Act.  Plaintiff also has the following California state registrations:

**California State Registrations**

| **Mark** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| "99¢ ONLY" | 23,078 | May 9, 1985 |
| "99¢" | 23,958 | August 1, 1985 |
| "OPEN 9 DAYS A WEEK 9 AM TO 9 PM" | 40,745 | August 19, 1992 |
| "99¢ ONLY STORES" | 42,970 | January 12, 1994 |

Plaintiff's mark is distinctive and well-known.  Numerous national and international media have profiled Plaintiff's business, including its distinctive marks.  The marks have been used in various television programs and in the works of a contemporary artist.

Defendants operate a similar discount retail business in Fresno, California, using the name "Variety 99 Cents Plus."  As illustrated in exhibit 19 to the complaint, their exterior sign mimics Plaintiff's trademarks by using the same large 99¢ logo, centrally placed.  Plaintiff contends that Defendants have constructive knowledge of Plaintiff's federal and state registered trademarks, and employ the intentionally confusing logo to mislead customers.  Plaintiff alleges that Defendants' use of infringing trademarks implies to the public an association between Defendants' business and Plaintiff.  It damages Plaintiff's good will and reputation, and dilutes the distinctiveness of Plaintiff's trademarks.

///

1    Plaintiff never consented to Defendants' use of its trademarks.  On or about March 12,

2  2009, Plaintiff sent Defendants actual notice of Plaintiff's trademark rights, identifying its

3  federally registered marks.  The letter demanded that Defendants cease and desist unauthorized

4  use of its infringing marks.  Defendants did not respond.  Plaintiff has continued to attempt to

5  communicate with Defendants, who have failed to respond.

6  **II.    Discussion**

7         **A.    Default Judgment**

8    Federal Rule of Civil Procedure 55(b)(2) provides for a default judgment:

9    (2) By the Court.  In all other cases the party entitled to judgment by default shall
     apply to the court therefor; but no judgment shall be entered against an infant or
10   incompetent person unless represented in the action by a general guardian,
     committee, conservator, or other such representative who has appeared therein.  If
11   the party against whom judgment by default is sought has appeared in the action,
     the party (or, if appearing by representative, the party's representative) shall be
12   served with written notice of the application for judgment at least 3 days prior to
     the hearing on such application.  If, in order to enable the court to enter judgment
13   or to carry it into effect, it is necessary to take an account or to determine the
     amount of damages or to establish the truth of any averment by evidence or to
14   make an investigation of any other matter, the court may conduct such hearings or
     order such references as it deems necessary and proper and shall accord a right of
15   trial by jury to the parties when and as required by any statute of the United States.

16   "[U]pon default, the well pleaded allegations of the complaint relating to liability are

17  taken as true."  *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319,

18  1323 (7th Cir. 1983).  *See also TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir.

19  1987).  Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint

20  are deemed admitted."  10 J. Moore, *Moore's Federal Practice* § 55.11 (3d ed. 2000).

21   A defendant is not deemed to have admitted any facts that are not well-pleaded or any

22  conclusions of law.  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007), *cert.

23  denied*, 129 S.Ct. 40 (2008).  Allegations that do no more than parrot the language of the statute

24  that the defendant is claimed to have violated are not well-pleaded facts but legal conclusions.

25  *Id.*  When a plaintiff fails to plead facts sufficient to support his or her cause of action, the

26  defendant's liability is not established by default.  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th

27  Cir. 1978).

28  ///

B.   **Federal Claims**

1.   **False Designation and Unfair Competition (15 U.S.C. § 1125(a))**

Plaintiff contends that Defendants have violated the statutory provisions relating to false designation and unfair competition set forth in 15 U.S.C. § 1125(a)(1).  To establish a claim under this subsection, sometimes referred to as "false advertising," a plaintiff must prove "(1) the defendant made a false statement about either the plaintiff's or its own product; (2) the statement was made in a commercial advertising or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Industries, Inc, v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 2788 (2009), *quoting Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n. 4 (9th Cir.), *cert. denied*, 537 U.S. 1047 (2002)..  Plaintiff alleged that Defendants' commercial use of a mark substantially similar to Plaintiff's registered marks constitutes such a false statement and is likely to mislead potential customers, diverting sales from Plaintiff to Defendants and co-opting the goodwill associated with Plaintiff's marks for Defendants' financial enrichment.  These allegations establish a cognizable claim for which Plaintiff is entitled to default judgment against Defendants.

2.   **Trademark Infringement (15 U.S.C. § 1114 and California Business and Professions Code § 14245 )**

The Lanham Act (15 U.S.C. § 1114) "allows the holder of a protectable trademark to hold liable any person who, without consent, 'use[s] in commerce any . . . registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services' which is likely to cause confusion."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).  To prevail on a claim of trademark infringement under 15 U.S.C. § 1114, the plaintiff must establish that "(1) it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause customer confusion." *Department of Parks and Recreation for the State of California v. Bazaar del Mundo Inc.*, 448

1   F.3d 1118, 1124 (9th Cir. 2006).  The analysis of trademark infringement is the same under

2   federal and California law.  *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100

3   (9th Cir. 2004).  Plaintiff has well pleaded its ownership interest in the 99¢ marks.

4        "The test of trademark infringement under state, federal, and common law is whether

5   there will be a likelihood of confusion."  *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d

6   1073, 1080 (9th Cir. 2005), *cert. denied*, 547 U.S. 1069 (2006).  To determine whether there is a

7   likelihood of confusion between the parties' allegedly similar goods and services, *AMF Inc. v.*

8   *Sleekcraft Boats* directs the court to consider eight factors: "(1) strength of mark; (2) proximity of

9   the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels

10  used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the

11  defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines."

12  599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds*, *Mattel, Inc. v. Walking*

13  *Mountain Productions*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003).  The *Sleekcraft* factors are not an

14  exhaustive list of factors relevant to a judicial determination of the likelihood of consumer

15  confusion, and courts must consider such factors as are relevant to the facts of the particular

16  situation.  *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1142

17  (9th Cir. 2011).

18       A party claiming trademark infringement is not required to prove that the alleged

19  infringer intended to deceive consumers.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d

20  1280, 1293 (9th Cir. 1992).  When an alleged infringer knowingly adopts a trademark similar to

21  another's, the court must assume that the public will be deceived.  *Sleekcraft*, 599 F.2d at 354.

22       Plaintiff alleges Defendants' use of substantially similar marks and a substantially similar

23  name for a similar discount retail store.  Similarity of marks in "sight, sound, or meaning" is a

24  critical factor is assessing the likelihood of confusion of two marks.  *M2 Software*, 421 F.3d at

25  1082.  When the products or services in question are related or complementary, as they are here,

26  the likelihood of confusion is higher.  *Id.*

27       Plaintiff has alleged a cognizable claim for trademark infringement, well-supported by

28  factual allegations.  As discussed above, by failing to respond to the complaint, Defendants are

deemed to have admitted those allegations.  Accordingly, Plaintiff is entitled to default judgment on its trademark infringement claim.

### 3.  Dilution (15 U.S.C. § 1125 (c) (1) and California Business and Professions Code § 14330)

Dilution refers to the diminution of a trademark's value when it is used to identify different products.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002), *cert. denied*, 537 U.S. 1171 (2003).  The Ninth Circuit has explained:

> For example, Tylenol snowboards, Netscape sex shops, and Harry Potter dry cleaners would all weaken the "commercial magnetism" of these marks and diminish their ability to evoke their original associations.  Ralph S. Brown, Jr., *Advertising and the Public Interest: Legal Protection of Trade Symbols*, 57 Yale L.J. 1165, 1187 (1948), *reprinted in* 108 Yale L.J. 1619 (1999).  These uses dilute the selling power of these trademarks by blurring their "uniqueness and singularity," Frank I. Schechter, *The Rational Basis of Trademark Protection*, 40 Harv. L.Rev. 813, 831 (1927), and/or by tarnishing them with negative associations.

> *Mattel*, 296 F.3d at 903.

When a trademark is blurred, its distinctiveness is diminished because it no longer brings to mind only the original user.  *Id.*  "Tarnishment occurs when a defendant's use of a mark similar to a plaintiff's [mark] presents a danger that consumers will form unfavorable associations with the mark."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999).

With the enactment of the Federal Trademark Dilution Act in 1996, the Lanham Act expanded to permit the owner of a famous mark to obtain an injunction against another person's commercial use of his mark in commerce.  *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005).  "Although this statutory language is ungainly, its meaning seems clear: It refers to the use of a famous and distinctive mark to sell goods other than those produced or authorized by the mark's owner."  *Mattel*, 296 F.3d at 903.  The purpose of anti-dilution provisions is to secure to the mark's owner the goodwill of its business and to ensure that consumers can distinguish competing producers.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992).  In contrast to other trademark protection provisions, dilution focuses on protecting the integrity of the trademark rather than protecting consumers from confusion.  *Mattel*, 296 F.3d at 905 (9th Cir. 2002).

///

7

1    To prove a dilution claim, "a plaintiff must show that (1) the mark is famous and

2  distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use

3  began after the mark became famous; and (4) the defendant's use of the mark is likely to cause

4  dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628,

5  634 (9th Cir. 2008).  The analysis is the same under both federal and California state law.  *Id.*  To

6  establish that a mark is "famous," a court must consider various relevant factors, including (1)

7  the duration, extent, and geographic reach of the advertising and publicity of the mark by the

8  registrant and others; (2) the amount, value, and geographic extent of goods and services offered

9  under the mark; (3) the extent of actual recognition of the mark; and (4) the nature of the mark's

10  registration.  15 U.S.C. § 1125(c).

11    Although the allegations within count 3 are largely legal conclusions, the factual

12  allegations preceding the claims are sufficient to establish the elements of dilution by blurring.

13  In support of its contention that its marks are "famous," Plaintiff alleges that it operates a chain

14  of 200 stores throughout California, Nevada. Texas and Arizona, and that it has used its marks

15  for 29 years since it opened its first store.  The marks are registered both nationally and in the

16  State of California.  The marks are consistent in that each features a large and centrally situated

17  "99."  Plaintiff uses its marks in a consistent manner in promotions and advertising, at the point

18  of sale, in administration and management, and in labeling and identification of its stores and

19  products.

20    Defendants' use of Plaintiff's famous mark for use in their own commercial activities

21  threatens the "generification" of Plaintiff's marks to denote any discount retail store.

22  Accordingly, the Court will order default judgment of Plaintiff's dilution claim.

23    **D.    Injunction**

24    Plaintiff seeks an injunction incorporating the following provisions.  In addition,

25  California Business and Professions Code § 14402 permits the entry of an injunction to restrain

26  the use of an infringing trade name. This Court recommends that these provisions requested by

27  Plaintiff be incorporated into the default judgment:

28  ///

Defendants and their officers, agents, and employees and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are permanently enjoined and restrained from

1. Using, copying, simulating, or in any other way infringing on Plaintiff's 99¢ marks, including all federally registered, state registered, and common law service marks, trade names, and trade dress, including but not limited to Federal Registration numbers 1,959,640; 2,401,900; 1,747,549; 1,741,928; 1,730,121; 1,712,553; 1,455,937; 1,395,427; 2,761,939; 3,132,449; 3,132,450; 3,144,871; and California State Registration numbers 23,078; 23,958; 40,745; and 42,970.

2. Displaying any signage or other business identifiers, including but not limited to building signs, directional signs, monument signs, computer templates, banners, advertising media, menus, business cards, and brochures containing prominently figured characters "99," "99¢," "$.99," or "$0.99," or any characters confusingly similar thereto as the name or part of the name of Defendants' business or corporation.

3. Using "99," "99¢," "$.99," or "$0.99," or any mark confusingly similar thereto, as the name or part of the name of Defendants' business or corporation, and displaying any references to "99," "99¢," "$.99," or "$0.99," or any mark confusingly similar thereto, in or in connection with Defendants' business or corporate name.

4. Using the "¢" symbol to refer to "cent(s)" or "Cent(s)" as part of the name of Defendants' business or on any signage as part of the name or identifier of Defendants' business.

5. Using the numeral "99" as a feature of any business or corporate name.

6. Using the numeral "99" as a feature of any business identifiers, including but not limited to building signs, directional signs, monument signs, computer templates, banners, advertising media, menus, business cards, and brochures.

7. Using the numeral "99" as a stylized of fanciful numeral as part of a business name.

8. Using any of the marks from Plaintiff's federally registered and common law service marks, trade names, trade dress, or anything confusingly similar to the operation of Defendants' business including the signage, storefront facade, interior decor, shopping carts, bags, baskets, merchandise stickers, cash register receipts, employee aprons, shirts, and name tags; vehicles; letterhead; purchase orders; company brochures and business cards; website and advertising; or confusingly similar the Plaintiff's other business identifiers, such as building signs, directional signs, monument signs, computer templates, banners, advertising media, and menus.

9. Using purple, pink, or blue color hues, or combinations of colors, for the mark and name of Defendants' business wherever that business mark or name or both are used by Defendants, including the use of the business mark or name or both on the items and places set forth in paragraph 8 above.

10. Referring to "99¢ store(s)" or "99¢ Store(s)" as if they were a generic term applicable to a category of deep discount or other retail stores.

11. Using, copying simulating, or otherwise mimicking Plaintiff's trade dress.

1       **E.  Attorneys' Fees**

2           "The court in exceptional cases may award reasonable attorney fees to the prevailing

3   party."  15 U.S.C. § 1117(a).  Plaintiff contends that, because Defendants admitted through

4   default that they knowingly, willfully, and maliciously used Plaintiff's marks with the intent to

5   trade on Plaintiff's goodwill and to injure Plaintiff, this case is an exceptional case in which

6   attorneys' fees should be awarded to Plaintiff.

7           Whether an infringement case is exceptional is a question of law for the district court.

8   *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005); *Earthquake Sound Corp. v. Bumper*

9   *Industries*, 352 F.3d 1210, 1216 (9th Cir. 2003).  A trademark infringement case is exceptional

10  when the record supports a finding that the defendant's infringement was malicious, fraudulent,

11  willful, or deliberate.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir.

12  2008); *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042 (9th Cir. 2003), *cert. denied*,

13  540 U.S. 1111 (2004).  Since the factual allegations of a complaint are deemed to be true in a

14  default judgment action, a district court may properly award attorneys' fees if the complaint

15  alleged malicious, fraudulent, willful, or deliberate infringement.  *Derek Andrew*, 528 F.3d at

16  702; *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002); *Televideo*

17  *Systems*, 826 F.2d at 917-18.

18          Here, the complaint includes no factual allegations that would support a finding that

19  Defendants' use of a sign including the term "99¢" was malicious, fraudulent, willful, or

20  deliberate, only Plaintiff's legal conclusions that Defendants' use of a substantially similar mark

21  was malicious, fraudulent, willful, or deliberate.  Such allegations are not factual allegations that

22  are presumed true in a default judgment.

23          Plaintiff's sole factual allegation relating to the issue of malicious, fraudulent, willful, or

24  deliberate conduct by Defendants is the allegation that Defendants did not change the name of

25  the store or remove the offending signs after Plaintiff advised them in writing that the business

26  name and signage infringed on Plaintiff's trademarks.  A finding that a defendant intentionally

27  infringed on the plaintiff's mark does not make a case exceptional in the absence of a showing of

28  malicious, fraudulent, deliberate or willful conduct.  *Watec*, 403 F.3d at 656; *Earthquake Sound*

1   *Corp.*, 352 F.3d at 1216-17.  In the absence of factual allegations of exceptional conduct by

2   Defendants, this Court does not find Plaintiff's case to be exceptional and denies Plaintiff's

3   request for attorneys' fees.

4          **F.     Monetary Damages**

5          Because these findings and recommendations recommend entry of judgment against

6   Defendants for infringement, unfair competition, dilution, and false designation of origin, the

7   Court may award Plaintiff damages including (1) Defendants' profits, (2) any damages sustained

8   by Plaintiff, and (3) the cost of the action.  15 U.S.C. § 1117(a).  If the District Judge determines

9   to adopt these findings and recommendations, the Court may order an accounting of Defendants'

10  profits as part of its order and a proof hearing to determine Plaintiff's damages.  The Court's

11  determination of monetary damages, including whether to grant damages, the amount of those

12  damages, and whether those damages should be enhanced under 15 U.S.C. § 1117(b), may then

13  follow.

14  **IV.    Recommendation**

15         Accordingly, the Court **RECOMMENDS** that judgment be entered in this action against

16  Defendants; that an injunction issue permanently restraining Defendants from the use of any

17  federally designated names and service marks to intentionally create confusion between its store

18  and Plaintiff's chain of stores; that an accounting of Defendants' profits be ordered; and that

19  Plaintiff not be awarded attorneys' fees.

20         These Findings and Recommendations are submitted to the Honorable Lawrence J.

21  O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. §

22  631(b)(1)(B) and Rule 305 of the Local Rules of Practice for the United States District Court,

23  Eastern District of California.  Within thirty (30) days after being served with a copy, any party

24  may file written objections with the court, serving a copy on all parties.  Such a document should

25  be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the

26  objections shall be served and filed within ten (10) days after service of the objections.  The

27  Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The

28  ///

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:      June 8, 2011**                          _____/s/ Sandra M. Snyder_____
                                                      UNITED STATES MAGISTRATE JUDGE