UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 99¢ ONLY STORES,<br>a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>VARIETY 99 CENTS PLUS, a California company; TOMY LE, an Individual; and DOES 1-20, INCLUSIVE,<br><br>Defendants.<br>_____ / | CASE NO. 1:10-cv-01343-LJO-SMS<br><br>**ORDER GRANTING<br>ATTORNEYS' FEES**<br><br>(Doc. 24) |

In response to the Court's award of attorneys' fees and costs in a July 12, 2011 order adopting, in part, certain findings and recommendations, Plaintiff has submitted a memorandum and declaration setting forth requested attorneys' fees. Having reviewed Plaintiff's submissions and applicable law, the Court orders payment of attorneys' fees and costs, but at a lesser amount than that requested by Plaintiff.

**I.     Attorneys' Fees Authorized in Exceptional Trademark Cases**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Whether an infringement case is exceptional is a question of law for the district court. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005); *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1216 (9th Cir. 2003). A trademark infringement case is exceptional when the record supports a finding that the

defendant's infringement was malicious, fraudulent, willful, or deliberate. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510 (9th Cir. 2011); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042 (9th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004).

Plaintiff contended that Defendants' infringement of Plaintiff's trademarks was willful and malicious. Since the factual allegations of a complaint are deemed to be true in a default judgment action, a district court may properly award attorneys' fees if the complaint alleged malicious, fraudulent, willful, or deliberate infringement. *Derek Andrew*, 528 F.3d at 702; *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002); *Televideo Systems*, 826 F.2d 915, 917-18 (9th Cir. 1987). In its order dated July 12, 2011, the District Court found the present case to be exceptional and directed Plaintiff to file a declaration of its fees and costs with the Magistrate Judge.

## II.     Calculating Attorneys' Fees

Courts use the lodestar approach set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983),[1] to calculate an award of reasonable attorney fees. To use this approach, the Court first determines the hours reasonably spent on the litigation, then multiplies them by a reasonable hourly rate. *Id.* at 433-34. In determining the "lodestar" figure, courts are to consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the extent to which the attorney's work on the case precluded other legal employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the lawyer and the client; and (12) awards in

///

---

[1] *Abrogated on other grounds by Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782 (1989); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 518 (9th Cir. 2000).

similar cases. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006), *quoting McGrath v. County of Nevada*, 67 F.3d 248, 252 n. 4 (9th Cir. 1995).

Although the lodestar fee is presumed to be reasonable, the Court may adjust it upward or downward as necessary to determine a reasonable fee. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley*, 461 U.S. at 434. The moving party has the burden of producing sufficient evidence that its hourly rates are reasonable. *Blum*, 465 U.S. at 896. A court has wide latitude in determining the number of hours reasonably expended and may reduce the hours if the time claimed is excessive, redundant, or otherwise unnecessary. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035 (1990).

### III.  Fees Requested Here

In this case, Plaintiff requests an award of $14,091.50 in attorney fees and $424.50. Plaintiff supports its request with a memorandum of law, an attorney's declaration, and redacted copies of billing statements prepared for Plaintiff.  Plaintiff complicated the Court's task by failing to tie the hours and dollar amounts requested to specific billing entries. As a result, the Court was required to arbitrarily assign individual invoice entries to the general categories that Plaintiff described in its brief.

Having considered the twelve factors listed above, the Court finds the hourly rate, time spent, the long-term relationship between Plaintiff and its law firm, experience and abilities of the attorneys, and awards in similar cases to be relevant in this case. These factors support the propriety of the fee reduction and net award provided here.

#### A.  Time Spent

Plaintiff allocates its requested fees 7.2 hours, complaint; 1.2 hours, change of address; 7.8 hours, amended complaint; 5 hours, motion for entry of default judgment; 17.2 hours, motion for default judgment; one hour, court contact; and 2.2 hours, review of court orders and documents.

///

///

### 1. **<u>Drafting, Filing, and Serving Complaint</u>**

The 7.2 hours requested for drafting, filing, and serving the complaint are documented on Invoice Nos. 801444 and 805143 (Doc. 24-1 at 7-10). The requested time includes 1 hour of paralegal time billed at $200 per hour; 1.7 hours for attorney Boris Zelkind, who appears to have served as a supervising attorney, billed at $470.00 per hour; and 4.0 hours for attorney Ian N. Jaquette, billed at $335.00 per hour.

This Court has previously estimated five hours to be an appropriate time to draft a similar complaint in another case brought by the same law firm on behalf of the same Plaintiff. *99¢ Only Stores v. 99 Cent Family Savings*, 2011 WL 2620983 (E.D. Cal. June 29, 2011) (No. 1:10-cv-1319-LJO-MJS). But for specific identifying information regarding the Defendants and thier particular actions that infringed on Plaintiff's marks, the complaint in *99 Cent Family Savings* is nearly identical to the complaint in this case. Such economy of effort is a reasonable by-product of a party's longstanding relationship with attorneys required to repeatedly initiate the actions of the same type on its behalf. Similar cases have found the time necessary to draft a complaint to be greatly reduced by an attorney's prior experience with the particular type of case or longstanding representation of the client or both. *See, e.g., Doran v. Corte Madera Inn Best Western*, 360 F.Supp.2d 1057 (N.D.Cal. 2005) (awarding .5 hours for the drafting of a complaint substantially similar to other complaints filed by the attorney in his ADA practice); *Elden v. Thrifty Payless Inc.*, 407 F.Supp.2d 1165, 1169-70 (E.D. Cal. 2005) (reducing time permitted for the supervising attorney's oversight of the drafting of a complaint to one-third of an hour); *Payne v. Bay Area Rapid Transit District*, 2009 WL 1626588 (N.D. Cal. June 5, 2009) (No. C 08-2098 WDB)(awarding three hours for drafting a complaint largely composed of boilerplate).

In addition, the Court notes that the law firm regularly billed paralegal time (at $200 an hour) for preparation of draft shells and templates, a clerical task largely consisting of filling in blanks with names, addresses, and similar information. Attorneys and paralegals may not legitimately bill for clerical or secretarial work. *Missouri v. Jenkins*, 491 U.S. 274,

288 n. 10 (1989). "'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by nonlawyers but which a lawyer may do if he has no other help available.'" *Id.*, quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). "[T]he court should disallow not only hours spent of tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (*internal quotations omitted*). Clerical work may not be billed since it is part of a law firm's overhead. *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325-26 (5th Cir. 1980). *See also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing paralegal bills to account for erroneous billing of clerical work performed by paralegal). Throughout this decision, the Court reduces paralegal time to the extent it is identifiable as clerical work.

With regard to the initial complaint, this Court will reduce the requested time allotments to .5 hour of paralegal time; three hours, attorney Jaquette; and one hour, attorney Zelkind.

### 2. Change of Address

Plaintiff requests 1.2 hours of time for the work of various personnel in notifying the Court and Defendants of the change of its office address. The court has the obligation to exclude from the calculation any hours that were not reasonably expended on the litigation. *Spegon*, 175 F.3d at 550 (*internal quotations omitted*). Since the decision to relocate the law firm's offices has no relationship whatsoever to legal services necessary for this litigation, this amount will be disallowed in full.

### 3. Amended Complaint

Amendment of the complaint involved no more that modifying the original complaint to add Defendant Tomy Le, the individual operating Variety 99 Cents Plus. Nonetheless, Plaintiff claims 7.8 hours for this task. For preparation, filing, and service of the amended

-5-

complaint, the attached invoices allocate 1.3 hours (including clerical duties), paralegal; 3.4 hours, Jaquette; and 1.0 hours, Zelkind (Doc.24-1 at 10, 13).  The billed time is excessive, especially that of Zelkind, who billed for supervisory work conducted *after* the amended complaint had been filed with the Clerk of Court.  In light of the minimal nature of the amendment, the Court will permit 1.0 hours, paralegal time, and 2.0 hour, Jaquette.  *See, e.g., Coles v. City of Oakland*, 2007 WL 39304 at *13 n.5 (N.D.Cal. January 4, 2007) (No. C03-2961 THE) (allowing 1.07 hours for preparing, filing and serving and amended complaint and completing legal research on malicious prosecution).

### 4. **Entry of Default**

Plaintiff requests five hours for its request for entry of default (Doc. 11), a six-page document that includes a separate caption page and two pages documenting service.[2]  The invoices reflect .5 hours (draft shells), paralegal; 1.4 hours, Jaquette; and 2.6 hours, Zelkind (Doc. 24-1 at 17, 20).  The requested hours are excessive for a largely ministerial task.  The Court will permit one hour, Jaquette, and one hour, Zelkind.

### 5. **Default Judgment**

Plaintiff requests 17.2 hours for preparation of the motion for default judgment, allocated 1 hour, paralegal (finalize and distribute documents); 12.8 hours at $285.00 per hour, attorney Nicholas Transier; 3.4, Zelkind (Doc. 24-1 at 20, 24).  Transier's excessive time appears to reflect the learning curve of a new and young associate, including entries such as "updating motion for default judgment documents based on partner feedback," and 3.1 hours of research on motion for default judgment (1.1 hour), service of summons and complaints on defendants (1 hour), and filing of default judgment (1 hour).  The Court understands that law firms typically require new associates to bill all time both to account for the associates' activities and to foster the habit of contemporaneous billing.  Time

---

[2] Plaintiff appears to refer to both the Clerk's entry of default and the later motion for default judgment as "default judgment."  The Court has identified time entries relevant to each event by reference to the November 8, 2010 filing date of the request for entry of default and the December 27, 2010 date of the motion for default judgment.

attributable to basic learning is not typically billed to clients, nor will the Court permit it to be billed to Defendants here.  Nor should Defendants be expected to subsidize the partner's supervision and mentoring of his new associate.  The Court will permit five hours for Transier and 2.5 hour for Zelkind.

### 6. Court Contact

Plaintiff requests one hour for its attorneys' contact with the Court.  The invoices reflect five calls to the Court by Zelkind and one call by Jacquette.  Even assuming that each call required the minimal amount of .2 hour, Plaintiff's request is very modest.  The Court will increase this category to .2 hour, Jaquette, and 1.0 hour, Zelkind.

### 7. Review of Court Orders and Documents

Plaintiff requests 2.2 hours for review of various Court orders and documents.  The Court docket reflects approximately 6 minute orders and similar ministerial entries by the Court, the initial litigant's instruction materials, Findings and Recommendations, and the Order adopting the Findings and recommendations in part.  Having combed the attached invoices for entries relating to the review of the Court's orders and documents, the Court has been able to identify 2.1 hours of attorney review; 1.2 hours, Jaquette (initial Court instruction packet); .4 hour, Transier (entries of default and default judgment order); and .6, Zelkind (scheduling conference information and entries of default).  The invoices omit review of the Findings and Recommendations or Default Judgment Order.  Accordingly, the Court will allot .4 hour, Transier; 1.5 hour, Jaquette; and 1.5 hour, Zelkind.

### B. Hourly Rates

Nothing about this trademark case required an especially experienced intellectual property attorney to pursue it.  Once the rather routine trademark violation causes of action were identified and the Complaint drafted, the case focused almost exclusively on the relatively simple procedural issues involved in any default case.

Further, while the Court appreciates that costs of practicing law, and hence legal fees, can be significantly higher in Southern California, where Plaintiff's firm is located, than in

the Central Valley of California, but for Plaintiff's ongoing relationship with this firm nothing in this case required Plaintiff to use the services of counsel from a more expensive area. As this Court has recently found, qualified and experienced trademark litigators in the Central Valley charge no more than $350 per hour for such work. *99 Cent Family Savings*, 2011 WL 2620983.

The Court agrees that $350 per hour is a generous but reasonable rate for the legal services performed by the attorneys and $150.00, for the paralegal work. Accordingly, 20.1 attorney hours total $7035.00, and 1.5 paralegal hours total $225.00, for a total fee award of $7260.00.

### IV.  **Fees**

Plaintiff documents costs and expenses totaling $424.02.

### V.  **ORDER**

The Court hereby orders Defendants to pay to Plaintiff attorneys' fees in the amount of $7260.00 and costs and expenses of $424.02, for a total amount of $7684.02.

IT IS SO ORDERED.

**Dated:   July 29, 2011**                              /s/ **Sandra M. Snyder**
                                                          UNITED STATES MAGISTRATE JUDGE

-8-